# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HECTOR L. CLASEN, JR.,** | Civil Action No. 22-5612 (MCA) |
| **Plaintiff,** | |
| v. | |
| **JUAN ZEPATA,** | **MEMORANDUM & ORDER** |
| **Defendant.** | |

This matter has been opened to the Court by Plaintiff's filing of an Amended Complaint and an application to proceed *in forma pauperis* ("IFP application"). *See* ECF No. 3, 3-1. At this time, the Court grants Plaintiff's IFP application to proceed. Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B).

In September 2022, Plaintiff was incarcerated at Hudson County Correctional Center, and he learned from his brother that their father was on his death bed in the intensive care unit at the hospital. Amended Complaint at 2. Plaintiff contacted Juan Zepata, a social worker at Hudson County Correctional Center, to arrange a visit with his father. *Id.* Zepata called the hospital to find out how Plaintiff's father was doing, which was not what Plaintiff requested. *Id.* Plaintiff filed a grievance/remedy form on the Kiosk to an advocate, Ms. Butler, but his inquiries were ignored. *Id.* at 2-3. Sadly, Plaintiff's father passed away on or about September 30, 2022. *Id.*

1

Plaintiff alleges that Zepata's failure to grant Plaintiff's request to visit his dying father violated his Fourteenth Amendment due process rights. *Id.*

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Plaintiff raises civil rights claims pursuant to 42 U.S.C. § 1983 arising from prison officials failure to grant his request to visit his dying father. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir.

2

2014)). To establish a claim under § 1983, Plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Plaintiff alleges that Zepata violated Plaintiff's Fourteenth Amended due process rights by failing to allow him to visit his dying father. Plaintiff's due process claim fails, however, irrespective of whether the Court construes it as the denial of a family visit or the denial of a furlough. The Due Process Clause applies when government action deprives a person of liberty or property." *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Liberty interests protected by the clause may arise from the Due Process Clause itself or arise from state-created rights. *See Sandin v. Conner*, 515 U.S. 483-84 (1995). The liberty interests of pretrial detainees differ from the liberty interests of inmates that have been sentenced. *Fuentes v. Wagner*, 206 F.3d 335, 341–2 (3rd Cir.2000). While a sentenced prisoner has a liberty interest only in remaining free from "restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," [1] *Sandin*, 515 U.S. at 484, the liberty

---

[1] For convicted prisoners, it is well established that the denial of a family visit is not an atypical and significant hardship and does not give rise to a protected liberty interest. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) ("The denial of prison access to a particular visitor is 'well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause.") (internal quotation marks and citation omitted); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2001) ("[I]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits.") (collecting cases). The Third Circuit has also held that a prisoner does not have a constitutional right to receive a furlough to visit his ailing child. *See Groppi v. Bosco*, 208 F. App'x. 113, 115 (3d Cir. (2006); *see also Spuck v. Ridge*, 347 F. App'x. 727, 730 (3d Cir. 2009)(quoting *Bowser v. Vose*, 968 F.2d 105, 106–07 (1st Cir.1992) ("It is clear that the denial of a furlough implicates no inherent liberty interest"). Other courts have similarly found that the Due Process Clause does not provide prisoners with a "liberty interest in attending a family member's funeral, and denial of such an opportunity does not impose an atypical or significant hardship on the inmate in relation to the normal incidents of prison life." *Ramziddin v. Plousis*, No. 07–5868, 2008 WL 906341, at * 4 (D.N.J. Apr.1, 2008); *see also Mills v. Walker*, No. 05–

3

interests of pretrial detainees are subjected to a higher standard of protection. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Although a pretrial detainee has a liberty interest in remaining free from punishment, restrictions on freedom that are reasonably related to a legitimate governmental objective are not punishment. *See Bell*, 441 U.S. at 535-39. Under *Bell*, the government has a legitimate interest in detaining inmates pending trial:

> Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

*Id.* at 537.

As relevant here, Courts in this circuit have held that there is no constitutional right to furlough or relaxation of bail to visit family or attend a funeral. *Sonnie v. Atlantic Cnty. Court*, Civ. No. 20-970, 2020 WL 4199901, at *2 (D.N.J. Jul. 21, 2020) (denial of pretrial detainee's request to visit his mother on her death bed); *see also Cromer v. Admin. of CCCF*, No. CIV. 14-235 JBS, 2014 WL 1669867, at *3 (D.N.J. Apr. 28, 2014) (citing *Bowser v. Vose*, 968 F.2d 105, 106 (1st Cir. 1992)); *Burrell v. Loungo*, 750 F. App'x 149, 157 (3d Cir. 2018) (same) reh'g denied (Dec. 19, 2018), cert. denied, 139 S. Ct. 2640 (2019).

---

1744, 2005 WL 2807171, at *5 (D.N.J. Oct. 25, 2005); *Griggs v. New Jersey*, No. 11–2673, 2011 WL 3739375, at * 4 (D.N.J. Aug. 24, 2011).

4

Moreover, there is no state-created due process right to this type of visitation or furlough. Under the relevant New Jersey statute, prisoners, in the discretion of the correctional institution, may be permitted to be at the bedside of a dying relative. *See* N.J.S.A. 30:4-8.1; N.J.A.C. 10A:18-7.2. Although New Jersey does permit furloughs to visit a dying relative in limited circumstances, the decision to grant a furlough is entirely within the discretion of the chief executive officer of the prison in which an inmate is housed; as such, neither New Jersey law nor administrative regulations have created a liberty interest protected by the Due Process clause. *See Mills*, 2005 WL 280717 at *5; *see also* N.J. Stat. Ann. § 30:4-8.1 ("the chief executive of any penal or correctional facility ... may in his discretion, and in conformity with the rules and regulations of the State ... authorize and permit the attendance of a prisoner or inmate at the bedside or funeral of a dying or deceased relative"); N.J. Admin Code § 10A:18-7.2 (pursuant to the statute, "the correctional facility Administrator may, at his or her own discretion, authorize and permit the attendance of an inmate at the bedside of a dying relative, or at a private viewing, when no relatives or friends are present, of a deceased relative").

Because Plaintiff lacks a protected liberty interest in his request to visit his dying father, the procedural protections of the Due Process Clause do not apply, and the Court will dismiss without prejudice Plaintiff's procedural Due Process claims against Zepata.

The Court also construes Plaintiff to assert that he was denied his constitutional right to intimate association. Prisoners retain a limited constitutional right to intimate association, established by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 95-96 (1987), and confirmed in *Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003). Nevertheless, "freedom of association is among the rights least compatible with incarceration," and some curtailment must be expected in

the prison context. *Overton*, 539 U.S. at 131. In *Overton*, the Supreme Court found that the challenged prison regulations that, among other things, severely restricted noncontact visitation by prisoners' minor relatives, withstood constitutional scrutiny under the four-part test of *Turner v. Safley*, 482 U.S. at 89. *Overton* suggests that limits on family visits with a prisoner may violate that rule if "permanent or for a [long] period" or if "applied in an arbitrary manner." 539 U.S. at 137.

"To the extent that a 'right' to visitation exists via the right to association, this entitlement is limited by prison officials' judgment in furthering penological goals." *Rivera v. Fed. Bureau of Prisons*, 197 F. App'x. 169,170 (3d Cir. 2006) (citing *Overton v. Bazzetta*, 539 U.S. at 131-32). Affording substantial deference to the professional judgment of prison administrators, *Overton*, 539 U.S. at 132, courts will uphold a prison official's action alleged to have impinged on an inmate's constitutional rights if "it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

Here, Plaintiff does not provide facts suggesting that the prison regulations regarding visits with dying relatives, as detailed above, are arbitrary, unrelated to legitimate penological interests, or otherwise so restrictive that they violate Plaintiff's right to intimate association. Indeed, Plaintiff provides no facts about the policy at all, and his allegations suggest that Zapata misunderstood his request to visit his father or, at worst, acted negligently, which is not a basis for liability under § 1983. As such, Plaintiff's denial of the right to intimate association claim is dismissed without prejudice.

Plaintiff also fails to state a claim for relief to the extent he seeks to hold prison officials liable for failing to respond to his grievance. To maintain a § 1983 claim, each individual defendant "must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423

6

F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. Thus, participation in the after-the-fact review of a grievance is insufficient to establish liability. *Id.* As such, Plaintiff allegations that a prison official ignored his grievance does not establish that the official participated in or was involved in the underlying conduct. *See Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006).

Although the Court doubts that Plaintiff can cure the deficiencies in his Amended Complaint, it will provide him with leave to submit a second amended Complaint within 45 days of the date of this Order. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment, unless doing so would be inequitable or futile).

**IT IS, THEREFORE,** on this __16__ day of May 2023,

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 (ECF Nos. 1-1, 3-1) is hereby GRANTED; and it is further

**ORDERED** that the Amended Complaint shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of Hudson County Correctional Center; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915

does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; i.e., Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Amended Complaint is dismissed without prejudice in its entirety for failure to state a claim for relief pursuant to the Court's screening authority under § 1915(e)(2)(B); and it is further

**ORDERED** that Plaintiff may submit a Second Amended Complaint and a request to reopen this matter within 45 days to the extent he can cure the deficiencies in his claims for relief; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Order to Plaintiff by regular U.S. mail and CLOSE this matter accordingly.

_____
Madeline Cox Arleo
United States District Judge